IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **KYLE SNAMISKA,** | § § § | |
| **Plaintiff,** | § § | |
| VS. | § § | CIVIL ACTION NO. 3:21-CV-264 |
| | § § | |
| **DAVINDER SEKHON,** **POWERSYSTEMS GROUP, LLC f/k/a ENGINEERED SOLUTIONS GROUP, LLC,** **INNOVATIVE MECHANICAL SOLUTIONS, LLC, a/k/a iMech and H-D ADVANCED MANUFACTURING COMPANY** | § § § § § § § § § | |
| **Defendants.** | § | *Jury Trial Requested* |

## ORIGINAL COMPLAINT

COMES NOW, Plaintiff, KYLE SNAMISKA (hereinafter "Plaintiff"), and files this, his Original Complaint against the below-named Defendants and in furtherance thereof, would respectfully show unto this Court as follows:

**I.**

**PARTIES**

1. Plaintiff is an adult resident citizen of the State of Texas residing in Brazoria County, Texas, working in Harris County, Texas where the underlying

causes of action arose.

2. Defendant, DAVINDER SEKHON, is an individual who may be served at his place of business at his place of business, 2418 Greens Road, Houston, Texas 77032. He is the President of ENGINEERED SOLUTIONS GROUP, LLC, (ESG as defined below), a wholly owned and/or operated subsidiary of H-D ADVANCED MANUFACTURING COMPANY.

3. Defendant, POWERSYSTEMS GROUP, LLC f/k/a ENGINEERED SOLUTIONS GROUP, LLC (hereinafter, "ESG") is a Texas Limited Liability Company and may be served with process through its registered agent for service, Roberto Rosario Ferreira, 2119 Holt Road, Arlington, Texas 76006. ESG is a wholly owned and/or operated subsidiary of H-D ADVANCED MANUFACTURING COMPANY.

4. Defendant, INNOVATIVE MECHANICAL SOLUTIONS, LLC, a/k/a iMech (hereinafter "iMech") is a Delaware Limited Liability Company corporation doing business in Harris County, Texas and may be served with process through its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. iMech is a wholly owned and/or operated subsidiary of ESG.

5. Defendant, H-D ADVANCED MANUFACTURING COMPANY, (hereinafter, "H-D AMC") is a Delaware Company doing business in Harris County, Texas and may be served with process through its Chief Executive Officer, Haluk "Luke" Durudogan at his place of business, 2418 Greens Road, Houston, Texas 77032.

6. For the purposes of 38 U.S.C.§ 4303(4), Defendants are private employers.

## II.

## JURISDICTION AND VENUE

7. Subject matter jurisdiction is conferred on this court by 38 U.S.C. §4323(b)(3), which provides the district courts of the United States have jurisdiction over a Uniformed Services Employment and Reemployment Rights Act ("USERRA") action brought against a private employer by the serviceperson. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under laws of the United States, and under 28 U.S.C. § 1343(a)(4), because Plaintiff seeks to secure relief under an Act of Congress that protects civil rights.

8. Venue is proper in this district under 38 U.S.C. §4323(c)(2) and 28 U.S.C. §1391(b)(2). Defendants are private employers that maintain places of business in the district of this United States District Court, and a substantial

part of the events giving rise to the claims in this action occurred in this district.

### III.

### **GENERAL FACTS**

9. Plaintiff is a reserve member of the United States Army National Guard.

10. All of Plaintiff's military records reflect honorable military service.

11. Plaintiff's applicable military service periods do not exceed 5 years.

12. Plaintiff began working for iMech on June 24, 2019, in Houston, Texas. Plaintiff was hired as the Controller for iMech.

13. iMech, in turn, is a wholly owned and/or operated subsidiary of ESG. ESG's President is DAVINDER SEKHON.

14. ESG is a wholly owned and/or operated subsidiary of H-D AMC. DAVINDER SEKHON is the ESG Segment Leader for H-D AMC and lends his management support to several H-D AMC subsidiaries.

15. The management of iMech – and therefore of the Plaintiff is that of H-D AMC, ESG, iMech and DAVINDER SEKHON. Paychecks and other human resources functions come through the Sewickley, Pennsylvania offices of H-D AMC which has integrated pay and human resources and control functions for all of the subsidiaries of H-D AMC, including ESG and

iMech, making them either joint employers or an integrated enterprise as those terms are known in law.  For example, at the beginning of his employment, the Plaintiff was asked to sign a confidentiality agreement with H-D AMC.  When he was fired, he was offered a severance agreement from iMech, by iMech's VP of Human Resources, Chris Orsak.  Chris Orsak was at the same time the Human Resources Director Vice President for H-D AMC.  Orsak claims on LinkedIn this interrelationship of HR functions into one entity -  H-D AMC - instead of the various subsidiaries with their own HR functions.  His duties are there listed by him as:  *"Strategic Human Resources for manufacturing Oil and Gas, Aerospace and Defense HR Operations, benefits, compensation, short-term incentives and recognition programs…Enterprise-wide performance management program…Forward thinking policies and benefits to address a changing workforce in many parts of the country…Re-brand the company as H-D, rather than individual acquisitions with their own brand."*  All the Defendant entities operated together as one, with one centralized HR functionality, and with DAVINDER SEKHON in control and management of all, with the power to hire and fire personnel from each Defendant entity at his own discretion.

16. Defendants were at all relevant times on notice that Plaintiff was a member of the Army National Guard.

17. Plaintiff was transparent with Defendants about his commitments with the Army National Guard.

18. On April 16, 2020, immediately upon being notified of his Title 32 federal orders of activation to in-person military service due to military mobilization, Plaintiff gave Defendants notice of his military service obligation beginning April 18, 2020, for a minimum of 31 days with an expectation of an extension.

19. Defendants immediately made Plaintiff uncomfortable regarding his military service by explaining that his job needed his continued work. Plaintiff agreed to continue to help remotely while on duty when he was on breaks during the day and at night.

20. Plaintiff would try to work at breaks during his military service during the day and at night. Plaintiff was in uniform at all video meetings with the Defendants.

21. On May 5, 2020, Plaintiff was travelling between locations with another deployed service member. A co-worker of Plaintiff, who was working in Defendants' Houston office, called Plaintiff. Because Plaintiff was

      travelling in a military capacity, the call was required to be hands-free and his fellow servicemember overheard the conversation. In that conversation, the co-worker informed Plaintiff that the co-worker had been in the office and overheard the President of the company, DAVINDER SEKHON, on a conference call with two people from the corporate office. The discussion was about dismissing Plaintiff because of him being placed on active duty.

22. In June of 2020, Plaintiff's orders were extended to the end of July 2020, but furloughs went into place for officer personnel. Plaintiff used his one-week furlough per month from July of 2020 through September of 2020 to perform duties for Defendants.

23. Plaintiff's orders were extended again. Plaintiff informed the president of the company DAVINDER SEKHON, the same person who was overheard expressing a desire to terminate Plaintiff's employment due to his being called to active duty, that his orders were extended through December.

24. In November of 2020, Plaintiff tested positive for COVID 19, but continued to assist with Defendants through his recovery and while on military duty.

25. In mid-December Plaintiff was cleared of COVID 19 and used a furlough to go into Defendants' office to assist with the physical inventory count for the year.

26. Plaintiff's service obligations were extended multiple times through December 24, 2020. Plaintiff kept Defendants aware of possible extensions to his service.

27. On January 17, 2021, Plaintiff was reactivated through February 14, 2021.

28. On March 3, 2021, Plaintiff was given a performance review by Defendants' President, DAVINDER SEKHON, who had been overheard expressing a desire to terminate Plaintiff's employment due to his being called to active duty. In the verbal portion of the review, Defendants' President, DAVINDER SEKHON, expressed his displeasure with Plaintiff's military activation, that Plaintiff had been gone as long as he had been in service to the United States, and complained that Plaintiff didn't do enough for the company in 2020 because he was serving in the United States military.

29. Plaintiff was called up for a longer training weekend which meant absence from work for two days. Because of his prior conversation with the President, DAVINDER SEKHON, regarding his unhappiness with Plaintiff's military service, Plaintiff decided to take two vacation days to cover his service rather than revealing to the President, DAVINDER SEKHON, that he had more military service, so as to avoid retaliation.

30. On March 26, 2021, Plaintiff's employment was terminated by Defendants.

The reason given by the president of the company, DAVINDER SEKHON, was that 'it was not working out'.

31. The employment relationship between Plaintiff and Defendants was irreparably damaged through no fault of Plaintiff.

32. At all relevant times hereto, Defendants had a duty to act in compliance of the law of USERRA and ensure that its agents follow the Act.

33. As a result of Defendants' unlawful conduct in violation of USERRA, Plaintiff has suffered a loss of earnings and other benefits of employment in an amount to be proved at trial.

34. To the extent Defendants allege application of any agreement that constitutes any limitation on Plaintiff's rights under USERRA, it is illegal, null and void, inapplicable and of no force or effect pursuant to 38 U.S.C. §4302.

## IV.

## CAUSES OF ACTION

35. Defendants violated Plaintiff's rights as guaranteed by the USERRA 38 U.S.C. §§ 4301 to 4335, including but not limited to: 38 U.S.C. § 4302(b), unlawful prerequisites; 38 U.S.C. § 4311, discrimination and retaliation in employment; § 4316 and C.F.R. § 1002.247, rights and benefits of persons absent from employment for service in the armed forces; and 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c), willful violations of his USERRA rights.

### A.

### Discrimination 38 U.S.C. §4311(a)

36. Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of this Complaint the same as though specifically set out herein again.

37. Defendants' actions caused the violation of Plaintiff's USERRA rights such that Plaintiff's obligation to perform service in the uniformed service was a motivating factor in decisions by Defendants which adversely affected Plaintiff's employment.

38. Defendants unlawfully discriminated against Plaintiff, among other ways, by denying Plaintiff employment and benefits of employment on the basis of

his membership, service, or obligation to perform service in the uniformed service, a right provided by USERRA.

## B.

### Discrimination/Retaliation 38 U.S.C. § 4311(c)

39. Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of this Complaint the same as though specifically set out herein again.

40. Defendants' actions caused the violation of Plaintiff's USERRA rights such that Plaintiff's exercising a right provided by USERRA, was a motivating factor in the harassment and retaliation he faced for completing his military obligations. This included, among other things, complaints about the inconvenience to the employer of Plaintiff fulfilling his duties even though no undue hardship was imposed upon the employer and openly expressing an intent to terminate Plaintiff's employment due to his service obligations.

30. Defendants unlawfully retaliated against Plaintiff, among other ways, by creating a toxic environment violating his time between service and return to work, attempting to blame Plaintiff for issues that preceded his employment in order to justify their unlawful actions, and discharging Plaintiff.

## C.

## **Willful Violations 38 U.S.C. § 4323**

41. Plaintiff adopts by reference and realleges each and every allegation of all paragraphs of all counts of this Complaint the same as though specifically set out herein again.

42. Defendants' conduct was willful as defined by 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c), because Plaintiff gave Defendants multiple notices of USERRA, and his rights and Defendants showed reckless disregard for this matter and USERRA requirements.

## V.

## **REQUEST FOR RELIEF**

43. Compensation for all injury and damages suffered by Plaintiff including, but not limited to, both economic and non-economic damages, in the amount to be proven at trial including back pay, front pay, pre and post judgment interest, lost benefits of employment, negative tax consequences of any award, liquidated damages, exemplary damages and punitive damages as provided by law.

44. Plaintiff's reasonable that attorneys' fees, costs, and expenses (including but not limited to expert witness fees) be awarded pursuant to 38 U.S.C. § 4323,

and as otherwise provided by law.

45. For such other and further relief as this Court deems just and equitable, including injunctive relief to enjoin future violations of the USERRA under 38 U.S.C. § 4323.

## VI.

## JURY TRIAL REQUESTED

46. Plaintiff requests a jury in this case.

Respectfully submitted,

/s/ Charles H. Peckham

_____
Charles H. Peckham
TBN: 15704900
FBN: 15770
cpeckham@pmlaw-us.com

Mary A. Martin
TBN:  00797280
FBN:  12272
mmartin@pmlaw-us.com

PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas  77057
(713) 574-9044
(713) 493-2255 – facsimile

**COUNSEL FOR PLAINTIFF**